UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES C. WEST,

    Plaintiff,

    v.

JULIE LARSON, et al.,

    Defendants.

CAUSE NO.: 3:17-CV-711-PPS-MGG

OPINION AND ORDER

James C. West, a prisoner without a lawyer, proceeds on an Eighth Amendment claim of deliberate indifference to his serious medical needs against Christopher Hall; James Tieman; and Lynn S. Mahoney Henckel.[1] He alleges that Nurse Henckel, Dr. Hall, and Dr. Tieman acted with deliberate indifference in treating his blood pressure and heart condition, which resulted in his hospitalization on August 2, 2017. The defendants filed a motion for summary judgment, arguing that they did not act with deliberate indifference but provided medical treatment in accordance with their professional judgment. In response, West argues that the defendants should have consulted with West's cardiologist with respect to his blood pressure medication or continued the blood pressure medications prescribed by that physician.

---

[1] For purposes of this order, I will refer to the defendants by the names provided by their counsel rather the names provided in the amended complaint. Notably, the defendants have identified "Nurse Lynn" as Lynn S. Mahoney Henckel.

# FACTS

Dr. Hall and Dr. Tieman work as physicians at the St. Joseph County Jail. ECF 70-4; ECF 70-5. Nurse Henckel works at the St. Joseph County Jail as the health services manager. ECF 70-6. In that capacity, she manages the clinical and operational components of the medical unit. *Id.* On occasion, she also administers medication to inmates. *Id.*

On March 24, 2017, West was admitted at the St. Joseph Regional Medical Center. ECF 70-2. On March 29, 2017, he was discharged with diagnoses of congestive heart failure, coronary artery disease, hypertension, and kidney failure. *Id.* at 10. He was also prescribed carvedilol for hypertension. *Id.* Carvedilol is a beta blocker commonly used to treat high blood pressure and heart failure. ECF 70-4. Dr. Varied, the attending physician, noted that angiotensin-converting enzyme (ACE) inhibitors were to be avoided due to the condition of West's kidneys and discontinued the prescription for Lisinopril. ECF 70-2 at 10, 14. Lisinopril is an ACE inhibitor commonly used to treat high blood pressure and heart failure. ECF 70-4.

On April 1, 2017, West arrived at the St. Joseph County Jail, and he informed medical staff that his medications consisted of aspirin, Lasix, simvastatin, nitroglycerin, and Zantac. ECF 70-3 at 3. Pharmacy records confirmed these medications and further indicated that West had a prescription for Lisinopril as of September 2016 as well as a prescription for carvedilol. *Id.* at 4. On April 2, a medication order was entered for carvedilol and Lisinopril, but Dr. Tieman rescinded the order for Lisinopril. *Id.* at 13, 18.

He reasoned that carvedilol was sufficient to treat West's blood pressure and that Lisinopril would have caused his blood pressure to drop too low. ECF 70-5.

On April 22 and April 23, 2017, Nurse Henckel gave West his prescribed medications, including carvedilol. ECF 70-3 at 34-35. According to West, he discussed his blood pressure medication with Nurse Henckel, and she told him, "Even if his blood pressure was a little high, it was good for him." ECF 72 at 6. On June 5, Dr. Hall reviewed West's vital measurements and prescribed amlodipine due to West's high blood pressure and decreased weight. *Id.* at 7; ECF 70-4. Amlodipine is a calcium channel blocker used to treat high blood pressure and angina pectoris, which is distinguishable from a heart attack. *Id*. Angina pectoris describes stable chest pain and is a common symptom of coronary artery disease. *Id.*

On July 19, 2017, West submitted a medical request form, complaining of chest pains, numbness in the left side, and headaches. ECF 70-3 at 24. He requested an appointment with a physician. *Id.* On July 20, Dr. Tieman examined West, increased the dosage of amlodipine, and ordered daily blood pressure checks for one week. *Id.* On July 31, Dr. Hall examined West due to his complaint of possible heart attacks. *Id.* at 25. He prescribed nitroglycerin for chest pain and scheduled an appointment with Dr. Patel, West's cardiologist. *Id.* According to West, Dr. Hall refused West's request for an electrocardiogram scan and told West there was nothing more he could do. ECF 72 at 8.

On August 2, 2017, West complained of pain in his chest and left arm and had difficulty walking. ECF 70-3 at 11. A nurse gave West a nitroglycerin pill, but West indicated that the pill did not alleviate his pain. *Id.* West was given a second

nitroglycerin pill with the same result. Dr. Tieman called an ambulance, and West was taken to Memorial Hospital, where he stayed until August 4. *Id.* The medical records from the hospital indicate no new diagnoses or medication adjustments, though West received educational materials on angina pectoris. *Id.* at 55-58. On August 15, 2017, West complained that his blood pressure medication was too strong and caused his blood pressure to drop too low, but Dr. Hall did not adjust his medication. ECF 70-3 at 26. In September 2017, West transferred to the Elkhart County Jail. ECF 4.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

4

ANALYSIS

West alleges that Dr. Hall, Dr. Tieman, and Nurse Henckel acted with deliberate indifference to his serious medical needs in treating his high blood pressure and heart condition, which resulted in a heart attack. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994.) A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents

5

"such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

The defendants argue that they did not act with deliberate indifference in providing medical treatment to West at the St. Joseph County Jail but relied on their medical judgment. West responds that Dr. Patel prescribed him Lisinopril and that the defendants should have either followed Dr. Patel's lead or consulted with Dr. Patel before changing his prescriptions. Though Dr. Patel may have prescribed Lisinopril, the record also indicates that medical staff at the St. Joseph Regional Medical Center determined that ACE inhibitors were medically inappropriate due to West's kidneys, and they discontinued Lisinopril. When West arrived at the jail, Dr. Tieman ordered carvedilol to control his blood pressure and discontinued Lisinopril, which was consistent with the hospital orders. When carvedilol alone was insufficient to control West's blood pressure, Dr. Hall prescribed amlodipine, a blood pressure medication. When Dr. Tieman observed that West's blood pressure was still too high, he increased the dosage of amlodipine. In sum, the record includes nothing to suggest that the decisions about West's blood pressure medication amounted to deliberate indifference.

West also alleges that Nurse Henckel acted with deliberate indifference when he discussed his high blood pressure with her. On April 22 and April 23, 2017, Nurse Henckel gave West his medications, including carvedilol. At this time, West complained that he was not receiving Lisinopril, and Nurse Henckel told him, "Even if his blood pressure was a little high, it was good for him." This statement does not reflect deliberate indifference but instead echoes the medical judgment of Dr. Varied, who recommended that West avoid ACE inhibitors, and Dr. Tieman, who determined that Lisinopril and carvedilol together would have caused West's blood pressure to drop too

7

low. Additionally, in August 2017, West requested a lesser dosage of medication because he believed his blood pressure was too low, illustrating that even West understood and appreciated the risk of low blood pressure as a legitimate medical concern.

West further alleges that Dr. Hall acted with deliberate indifference during his appointment on July 31, 2017, when Dr. Hall examined West based on his complaint of possible heart attacks. Dr. Hall prescribed nitroglycerin for chest pain and scheduled an appointment with Dr. Patel. He also refused West's request for an electrocardiogram scan and told West there was nothing more he could do. The record reflects that Dr. Hall determined that West suffered from chest pain rather than a series of heart attacks and treated him accordingly. West contends that Dr. Hall should have ordered an electrocardiogram scan based on West's history of heart disease and that the failure to do so resulted in his hospitalization for a heart attack. However, there is no medical evidence to support either of these contentions. Instead, the hospitalization records indicate that West merely experienced chest pain and offer no indication that the jail medical staff should have altered their course of treatment in any way.

In conclusion, the record does not demonstrate that the defendants acted with deliberate indifference but instead unequivocally reflects that they provided medical treatment consistent with their medical judgment. Therefore, the defendants' motion for summary judgment is granted.

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 68); and

(2) DIRECTS the clerk to enter judgment and to close this case.

SO ORDERED on October 5, 2018.

                                        s/ Philip P. Simon
                                        JUDGE
                                        UNITED STATES DISTRICT COURT